IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

WAYNE BROCKMAN,

WENDELL RAY SCOTT,

WAYNE PETERSEN, JR.,

NICOLE LLOYD-HARDEN,

LAVAR REYNOLDS,

and

ANGELIQUE EPPS,

    Plaintiffs,

v.                                         CIVIL ACTION NO. 4:15-CV-74

KEYSTONE NEWPORT NEWS, LLC,
T/A NEWPORT NEWS BEHAVIORAL
HEALTH CENTER,

UNIVERSAL HEALTH SERVICES,
INC.,

and

UHS OF DELAWARE, INC.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Before this Court are the settlements reached by the parties in this case. After a conference call with the Court, the parties submitted a Joint Motion for Settlement Agreement Approval and Dismissal of Plaintiffs' Amended Complaint with Prejudice ("Joint Motion I") on August 30, 2018. ECF No. 32. Parties also filed a Motion to Seal their settlement agreements on August 30, 2018. ECF Nos. 34–35. Magistrate Judge Leonard denied this motion on September

1

20, 2018. ECF No. 38. A hearing was held on September 25, 2018 regarding Joint Motion I, during which the Court informed the parties that it would not approve the settlements as written and ordered the parties to file revised settlement agreements by October 5, 2018. ECF No. 39. On October 5, 2018, the parties submitted a new Joint Motion for Settlement Agreement Approval and Dismissal of Plaintiffs' Amended Complaint with Prejudice ("Joint Motion II"). ECF Nos. 40–41.

For the reasons set forth below, the Court finds that the original settlement agreements under Joint Motion I were unfair and unreasonable but the revised agreements under Joint Motion II are fair and reasonable. Therefore, Joint Motion I is **DENIED** and Joint Motion II is **GRANTED**.

## I. FACTUAL AND PROCEDURAL HISTORY

On July 14, 2015, Plaintiff Wayne Brockman ("Brockman") filed his initial Complaint against Defendants Keystone Newport News, L.L.C. ("Keystone") and Universal Health Services, Inc. ("Universal") alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* ECF No. 1. Keystone and Universal filed an Answer on October 1, 2015. ECF No. 5. On January 21, 2016, Brockman entered a First Amended Complaint adding Wendell Ray Scott ("Scott"), Wayne Petersen, Jr. ("Petersen"), Nicole Lloyd-Harden ("Lloyd-Harden"), Lavar Reynolds ("Reynolds"), and Angelique Epps ("Epps," collectively with Mr. Brockman "Plaintiffs") as co-plaintiffs and UHS of Delaware, Inc. ("UHS," collectively with Keystone and Universal "Defendants") as a co-defendant.[1] ECF No. 17. On March 25, 2016, the Court granted the parties joint motion to dismiss the complaint and compel arbitration. ECF No. 15. Arbitration was initiated, but parties entered settlement negotiations. *See* ECF No. 28.

---

[1] Plaintiffs do not seek a class action or collective action status. *Id.* at ¶ 1.

Mr. Brockman also filed an individual separate action against Keystone alone on March 20, 2017, alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111, *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq. Brockman v. Keystone Newport News, L.L.C.*, No. 4:17-cv-24, ECF No. 1. However, this case was dismissed because Mr. Brockman failed to serve process on Keystone. ECF No. 4.

On August 17, 2018, the parties submitted to the Court a Joint Stipulation of Dismissal. ECF No. 31. However, the Court held a conference call with the parties to inform them that due to the FLSA nature of this case, they must file a motion to approve the settlements, which the parties jointly filed on August 30, 2018. ECF Nos. 32–33. The Parties included the original settlement agreements for each Plaintiff. ECF No. 33-1–6. A fairness hearing was held on September 25, 2018, during which the Court requested the parties to revise and refile the settlement agreements given the evident unfairness and unreasonableness. *See* ECF No. 39. On October 5, 2018, the parties filed Joint Motion II with the revised settlement agreements. ECF Nos. 40–41.

In their First Amended Complaint, Plaintiffs assert that Defendants required or allowed them to work over 40 hours in their seven-day work periods without overtime pay. ECF No. 17 at ¶ 3. Plaintiffs were "working supervisors" and non-exempt mental health counselors who were employed at Defendants (though they had varying titles, including "unit manager," "assistant program director," and "program director"). *Id.* at ¶ 19–20. Defendants allegedly required Plaintiffs to work outside normal working hours and normally scheduled shifts, including responding to emails, texts, and phone calls, without overtime compensation (1.5 times their normal hourly rate). *Id.* at ¶ 21. As such, they regularly worked more than 40 hours per week. *Id.* at ¶ 22. Defendants allegedly had actual knowledge that Plaintiffs were not

adequately compensated for their overtime and did so "willfully, recklessly and in bad faith." *See id.* at ¶¶ 27–30. Plaintiffs do not allege specifically the precise amount since such information would be learned during discovery. *See id.* at ¶ 26.

## II. LEGAL STANDARD

The FLSA has a generally policy against employees' ability to waive claims of unpaid overtime "'for fear that employers would coerce employees into settlement and waiver.'" *Lopez v. Nights of Cabiria*, 96 F. Supp. 3d 170, 175 (S.D.N.Y. 2015). As such, the FLSA rights of employees "'cannot be abridged by contract or otherwise waived because this would nullify for purposes of the statute and thwart the legislative policies it was designed to effectuate.'" *Lynn's Food Stores, Inc. v. United States*, 679 F.3d 1350, 1352 (11th Cir. 1982). Therefore, settlement agreements and dismissals of FLSA actions require court approval after the Court has reviewed the settlement for fairness and reasonableness. 29 U.S.C. § 216(b); *Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir. 2007); *Lynn's Food Stores*, 679 F.2d at 1353; *Baker v. Dolgencorp, Inc.*, 818 F. Supp. 2d 940, 941 (E.D. Va. 2011). While a hearing is not required, the Court may *sua sponte* order a fairness hearing to determine if settlement should be approved. *See, e.g., Hall v. Higher One Machines, Inc.*, No. 5:15-cv-670-F, 2016 WL 5416582, at *6 (E.D.N.C. Sept. 26, 2016).

In evaluating a FLSA settlement agreement, the Court must determine three things: (1) that the FLSA issues are "actually in dispute"; (2) that the settlement is a "[r]easonable compromise over the issues"; and (3) if there is a clause on attorneys' fees then the award must reasonable and independently assessed. *Hendrix v. Mobilelink Va., L.L.C.*, No. 2:16-cv-394, 2017 WL 2438067, at *1 (E.D. Va. May 26, 2017) (citations omitted). Generally, "where there is an 'assurance of an adversarial context' and the employee is 'represented by an attorney who can

4

protect [his] rights under the statute,' the settlement will be approved. *Duprey v. Scotts Co. L.L.C.*, 30 F. Supp. 3d 404, 408 (D. Md. 2014) (quoting *Lynn's Food Stores*, 679 F.3d at 1354).

As to the first prong, "courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement." *Id.* The Court must find that the employees seek to enforce their FLSA rights and that the parties demonstrate an actual disagreement as to the factual allegations that undergird the action. *See Lynn's Food Stores*, 679 F.2d at 1354.

Regarding the reasonable compromise factor, courts should consider the following:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [ ] counsel . . . ; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Hendrix*, 2017 WL 2438067, at *1 (quoting *Saman v. LBDP, Inc.*, No. 12-1083, 2013 WL 2949047, at *3 (D. Md. June 13, 2013)).

Finally, while the FLSA requires the defendant to pay plaintiff's attorneys' fees if the plaintiff is successful, 29 U.S.C. § 216(b), a settlement means that judgment is not entered in favor of either party, so attorneys' fees are not required. *Lane v. Ko-Me, L.L.C.*, No. 10-2261, 2011 WL 3880427, at *2 (D. Md. Aug. 31, 2011). Therefore, if the settlement agreement does consider awarding attorneys' fees, the Court must also determine if the attorneys' fees are reasonable and that they were "independently assessed, regardless of whether there is any suggestion that a conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Id.* at *3 (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1243 (M.D. Fla. 2010)).

In determining the fairness and reasonableness of a FLSA settlement agreement, the Court may confirm the agreement, preliminary grant the agreement but order parties to strike portions that it deems unfair or unreasonable, or deny the agreement if there are too many issues with the agreement. *See, e.g.*, *Hendrix*, 2017 WL 2438067, at *4 (denying settlement approval due to onerous and legal release clause and unreasonable settlement amount); *Stephens v. MAC Bus. Sols., Inc.*, No. 15-3057, 2016 WL 3977473, at *3 (D. Md. July 25, 2016) (approving settlement but ordering parties to submit a new agreement that removes the unreasonable confidentiality clause); *Lomascolo*, 2009 WL 9094955, at *1 (granting settlement approval).

### III. DISCUSSION

#### A. FLSA Issues Actually in Dispute

The FLSA requires that employers must not encourage or allow non-exempt employees to work more than 40 hours per work week unless they are paid 1.5 times the regular hourly rate. 29 U.S.C. § 207(a)(1). In order for this overtime requirement to apply, the employees must be not fall within one of the exceptions in the FLSA. *See* §§ 213–14.

Plaintiffs here have already brought suit against Defendants. ECF No. 17. Plaintiffs specifically assert that Defendants failed to pay Plaintiffs overtime compensation for hours worked beyond 40 hours in a work week. *Id.* at ¶¶ 21–22. Plaintiffs also allege that Defendants knew that Plaintiffs were not paid overtime. *Id.* at ¶¶ 27–30. Plaintiffs do not specifically allege how many hours of unpaid overtime they claim, but they suggest this would be ascertainable through discovery. *Id.* at ¶ 26.

Defendants appear to contest the FLSA claims. Defendants filed an answer to Brockman's initial complaint denying the allegations. ECF No. 5. Both parties moved to have the matter submitted to arbitration. ECF Nos. 14, 16. The settlement agreements specifically

state that the document "shall not be deemed or construed at any time for any purpose as an admission by [Defendants] of wrongdoing or evidence of any liability or unlawful conduct of any kind." ECF Nos. 33-1 at ¶ 13; 44-1 at ¶ 10. At the hearing, the parties also disagreed as to the merits of Plaintiffs' separate claims. The Court finds the FLSA issues are actually in dispute.

**B. Reasonable Compromise Over Issues**

The Court first considers the six factors under the second prong. *See Hendrix*, 2017 WL 2438067, at *1. The Court then looks at the agreement for any unfair or unreasonable terms.

*1. Extent of Discovery and Stage of Proceedings*

After the Court issued an order compelling arbitration, the parties began settlement negotiations, so an arbitration hearing has never been set. ECF No. 21, 28. Moreover, the parties agreed to hold discovery in abeyance due to their settlement negotiations. *See id.* Therefore, the proceedings are still in the preliminary stages, with much left to proceed should the parties decide to litigate. The Court finds that this litigation is in its early stages and it would conserve resources of the parties and of this Court to resolve this action through settlements.

*2. Fraud or Collusion*

Next, there is presumptively no fraud or collusion between the parties "in the absence of any evidence to the contrary." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at *12 (E.D. Va. Sept. 28, 2009). At the hearing, the Court asked the parties if there was any hint of fraud or collusion, which both parties denied. *See* ECF No. 41 at 4. The Court does not deny the settlement agreements on the basis of fraud or collusion.

*3. Counsel's Experience*

The Court also asked the counsel for each party about their expertise in FLSA cases. Plaintiffs' counsel has been practicing since 1991 and has been involved in many FLSA cases,

including "two of the four largest FLSA cases" in the area. *Id.* Defendants' counsel has been practicing since 1999 and has also had significant experience in defending employment law cases, including those under the FLSA. *See id.* at 5. The Court finds that the attorneys in this case are sufficiently experienced to allow the settlement agreement to move forward.

*4. Opinions of Both Parties' Counsel*

At the hearing, the Court asked each Counsel their opinion on the settlement agreements. Both parties agreed that the settlements are fair and reasonable.

*5. Probability of Success and Settlement Amount Compared to Potential Recovery*

Finally, the Court must consider "the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery." *Hendrix*, 2017 WL 2438067, at *1 (citations omitted). In their Amended Complaint, Plaintiffs never alleged any estimation of how much overtime was unpaid and what they believed they were owed. One of the elements of a claim under § 216 is that Plaintiffs must establish "the 'amount and extent' of the work 'as a matter of just and reasonable inference.'" *Talton v. I.H. Caffey Distrib. Co., Inc.*, 124 F. App'x 760, 763 (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986)).

At the hearing, the Court asked Plaintiffs' counsel what he estimated his clients potential recovery to be. Counsel informed the Court that Plaintiffs were each entitled to around $6,000 according to his estimates, except for Mr. Petersen who was entitled to something like $400. Each of the Plaintiffs will recover $2,900 under the settlement agreements, except for Mr. Petersen who will recover only $500. ECF Nos. 33-1 at ¶ 2; ECF No. 33-2 at ¶ 2; ECF No. 33-3 at ¶ 2; ECF No. 33-4 at ¶ 2; ECF No. 33-5 at ¶ 2; ECF No. 33-6 at ¶ 2. ; 41-1 at 2. The

estimated percentage of recovery for each Plaintiff is between forty and fifty percent, except for Mr. Petersen who appears to be recovering around 120%.

Courts have found that sixty or eighty percent recovery is sufficient. *See Duprey*, 30 F. Supp. 3d at 409–10. The percentage of recovery in this case is lower, but sixty percent recovery is not an absolute floor. *See id.* Given that Plaintiffs may not adequately pled their FLSA claims and the amount of discovery the parties would have to go through, the Court finds that Plaintiffs' recovery percentages sufficient.[2]

*6. Release of Liabilities*

The original settlement agreements include a "Release of Claims" section, which releases Defendants of any liability to Plaintiffs under a slew of federal and state laws.[3] ECF No. 33-1 at ¶ 5(a). The original agreements also specifically release Defendants of liabilities under the Age Discrimination Act and provides notice to Plaintiffs including that the agreements "provide[] consideration in excess of any value to which [Plaintiffs are] otherwise entitled." *Id.* at ¶ 6.

Part of the Court's review of FLSA settlements is "to police unequal bargaining power between employees and employers." *Lopez*, 96 F. Supp. 3d at 181. When liability releases in FLSA agreements reach beyond the scope of the action and release the employer from liability

---

[2] Parties note that the average percentage is 55.8%. ECF No. 41 at 5. That average misrepresents the larger story. Five of the six Plaintiffs received between forty and fifty percent. *Id.* The only reason why the average cracks fifty percent is because Mr. Petersen has a recovery of 120% of around $400. *Id.* It is slightly misleading to believe the 55.8% number adequately represents Plaintiffs' recovery.

[3] Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1964; 42 U.S.C. §§ 1981-88; the Employee Retirement Income Security Act of 1974 (with some exceptions); the Immigration Reform and Control Act; the ADA (with some exceptions); the Age Discrimination in Employment Act of 1967; the Workers Adjustment and Retraining Notification Act; the FLSA; the Fair Credit Reporting Act; the Family and Medical Leave Act; the Occupational and Safety and Health Act; the Equal Pay Act; the Genetic Information Nondiscrimination Act of 2008; the Sarbanes-Oxley Act of 2002; 11 U.S.C. § 3730(h); the Virginia Human Rights Act (and related regulations); Va. Code § 65.2-308(A)-(B); the Virginia Equal Pay Act; the Virginians with Disabilities Act; the Virginia AIDS Testing Law; the Virginia Wage Payment and Hours Laws; the Virginia Occupations Safety and Health Law; Va. Code § 8.01-40; Va. Code § 40.1-27; Va. Code § 40.1-28.7:2; Va. Code § 18.2-465.1; Va. Code § 44-98; Va. Code. §§ 18.2-499-500; any breach of contract, wrongful discharge, or defamation claims; any public policy, tort, or common law claims; and any right or ability to be in a class or collective action.

beyond the FLSA, "the parties [must] show whether Plantiff[s] ha[ve] been 'independent compensated for the broad release of claims unrelated to any dispute regarding FLSA coverage or wages due,' such that the settlement is reasonable." *Hendrix*, 2017 WL 2438067, at *3 (quoting *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. 10-5243, 2012 WL 6629608, at *5 (N.D. Cal. Dec. 19, 2012). Thus, without sufficient reason, overbroad liability releases are considered unreasonable in FLSA settlements. *Id.*; *Lopez*, 96 F. Supp. 3d at 181.

Here, Mr. Brockman is compensated $2,900. ECF No. 33-1 at ¶ 2. Supposedly, this is meant to cover his FLSA claim *and* his claims under Title VII and the ADA that he brought in his independent action that was later dismissed for failure to serve process. *Brockman v. Keystone Newport News, L.L.C.*, No. 4:17-cv-24, ECF No. 4. The remaining Plaintiffs all received $2,900, except one who received only $500. *See* ECF No. 33-2 at ¶ 2; ECF No. 33-3 at ¶ 2; ECF No. 33-4 at ¶ 2; ECF No. 33-5 at ¶ 2; ECF No. 33-6 at ¶ 2. At a minimum, Mr. Brockman's compensation presumably does not have sufficient consideration for the additional waiver of claims. Even so, the Court finds that $2,900 (or $500) does not sufficiently cover the releases of all the other federal and state claims.

Therefore, the Court finds that Paragraphs 5 and 6 in the original agreements are unreasonable. The revised settlement agreements significantly reduce the waivers to just two: the FLSA and the Virginia Wage Payment and Hour Laws. ECF No. 41-1 at 3. Given that the revised agreements only waive the FLSA and a related state law claim, the Court finds that these releases are fair and reasonable.

### 7. *Confidentiality and Non-Disparagement Clauses*

The original settlement agreements contain a lengthy and rather iron-clad confidentiality clause. *See* ECF No. 33-1 at ¶ 8. This clause requires Plaintiffs "not to disclose any information

regarding the terms or conditions of [these agreements], except to [Plaintiffs'] spouse[s], tax advisor[s], and/or any attorney with whom [Plaintiffs] choose[] to consult regarding [Plaintiffs'] consideration[s] of [these agreements]." *Id.* The agreements even have language that Plaintiffs should repeat if they are ever asked about the lawsuit: "The matter has been resolved." *Id.*

The clause also states that should Plaintiffs breach the confidentiality clause, they must return fifty percent of the proceeds of the settlement payments and Defendants' duty to continue making any additional payments is terminated. *Id.* Although it is not labeled as such, this acts as a liquidated damages provision. *See Lopez*, 96 F. Supp. 3d at 180. The settlements also include a non-disparagement clause. ECF No. 33-1 at ¶ 10.

The FLSA was designed to protect "'the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others.'" *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006) (quoting *Benshoff v. City of Va. Beach*, 180 F.3d 136, 140 (4th Cir. 1999)). Confidentiality clauses like the one in the original agreements are repeatedly found to be unreasonable in FLSA settlement cases because they are "'contrary to well-established public policy' because it inhibits one of the FLSA's primary goals—to ensure 'that all workers are aware of their rights.'" *Lopez*, 96 F. Supp. at 178; *see Stephens*, 2016 WL 3977473, at *3; *Morris*, 2013 WL 6116861, at *4. "The best way for a worker to learn about his or her employment rights is directly or indirectly from a co-worker or an outside organization," and confidentiality clauses such as the one at issue prevent that. *Lopez*, 96 F. Supp. 3d at 179.

Moreover, confidentiality clauses that include a liquidated damages provisions are even more unfair. *Id.* at 180. Liquidated damages based on a confidentiality clause in an FLSA settlement "has the insalubrious effect of threatening to penalize an FLSA plaintiff who discusses his or her efforts to enforce statutory rights to fair pay." *Id.*

Non-disparagement clauses are also considered unreasonable for much of the same reasons. *Id.* at 181 (finding that the non-disparagement provision of a confidentiality clause was unfair).

The only way confidentiality and non-disparagement clauses pass muster is if the parties provide a "compelling reason" to support its existence. *Stephens*, 2016 WL 3977473, at *3. Without any such justification, the confidentiality clause and liquidated damages provisions are unreasonable. Such a reason would be "the need to keep confidential proprietary business information or trade secrets," *Morris*, 2013 WL 6116861, at *3, which would include "business techniques, the identification of [Defendants'] customers, their finances." *360 Mortg. Grp., L.L.C. v. Stonegate Mortg. Corp.*, No. 5:14-cv-310, 2016 WL 4939308, at *1 (E.D.N.C. Spet. 14, 2016). Notably, "'fear of copycat lawsuits or embarrassing inquires' does not 'suffice to defeat' these objectives." *Lopez*, 96 F. Supp. 3d at 180 (quoting *Wolsinky v. Scholastic Inc.*, 900 F. supp. 2d 332, 338 (S.D.N.Y. 2012). At the hearing, Defendants argued that confidentiality was important due to the sensitive nature of the mental health services provided at the facilities, particularly with children. However, settlement agreements on FLSA claims have nothing to do with any information related to these services that would require any form of confidentiality.

As such, the Court finds that the confidentiality clause and non-disparagement clause in Paragraphs 8 and 10 of the original agreements unreasonable. The parties have removed these paragraphs from the revised settlement agreements.

### C. Attorneys' Fees

The settlement agreements state that the parties will bear their own costs, including attorneys' fees. ECF No. 33-1 at ¶ 11. At the hearing, Plaintiffs' counsel noted that he would not be receiving any fees out of Plaintiffs' recovery under the settlement agreements. Because

there is no award of attorneys' fees and Plaintiffs' recovery would not be reduced at all, the Court need not review attorneys' fees for reasonableness.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the original settlement agreements are unfair and unreasonable but that the revised settlement agreements are fair and reasonable since they have removed the troubling clauses. Therefore, the parties' Joint Motion I is **DENIED**, while their Joint Motion II is **GRANTED**. The settlement agreements are **APPROVED**, and the action is **DISMISSED WITH PREJUDICE**. The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Raymond A. Jackson
United States District Judge

Newport News, Virginia
October /2, 2018